IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ACC HEALTH, LLC,

    Plaintiff,

vs.                                            Civ. No. 14-846 KG/WPL

ADDON SERVICES, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support (Motion for TRO and Preliminary Injunction), filed September 18, 2014.  (Doc. 3).  The Court held a hearing on this matter on September 19, 2014.  Present at the hearing by telephone were Plaintiff's counsel, Mark Barron and Hilary Cairnie.  Defendant's counsel, Frank Apodaca, was present at the hearing in person.  At the close of the hearing, the Court, having considered the motion, arguments, and relevant law, and being otherwise fully informed, determined that Plaintiff's Motion for TRO and Preliminary Injunction should be denied.

I.     *Procedural and Factual Background*

On September 18, 2014, Plaintiff contemporaneously filed a Complaint and the Motion for TRO and Preliminary Injunction against Defendant.  (Docs. 2 and 3).  The parties, through motions and oral argument, presented the following facts to the Court in consideration of Plaintiff's Motion for TRO and Preliminary Injunction.

In early August 2014, Defendant contacted Plaintiff to inquire whether Plaintiff would subcontract with Defendant for an event located at Camp Grayling Joint Maneuver Training

Center, on September 25-27, 2014, for the purpose of providing medical and dental services to the Michigan Army National Guard (September event).  (Doc. 2) at 4; (Doc. 3) at 4.  It is anticipated that Defendant and its subcontractor will service over 400 soldiers at the September event. Hr'g Tr. at 19-20, Sept. 19, 2014.[1]

On August 12, 2014, Plaintiff and Defendant entered into a mutual non-disclosure agreement (Agreement) in order for the parties to exchange proprietary and commercial information during preliminary negotiations.  (Doc. 2) at 1; (Doc. 8-1).  The Agreement included an exclusivity clause that stated, in its entirety,

> [t]he parties agree to use best efforts to come to technical and pricing terms for the Michigan Army National Guard Event, and that neither shall pursue this opportunity on their own or in collaboration with anyone else other than the parties to this Agreement.  If the parties cannot reach mutually agreeable technical and/or pricing terms, Addon may utilize another teaming partner for this opportunity.  Furthermore, nothing contained herein shall obligate either party to team up with the other party on any other opportunities now or in the future.

(Doc. 8-1) at 3.  Also, on August 12, 2014, Prita Abraham (Abraham), Defendant's President, and Virginia Berger (Berger), Plaintiff's CEO, exchanged a series of emails discussing Defendant's requirements for the September event and the terms of Plaintiff's informal proposal. (Doc. 9-1) at 1-8.  In accordance with Defendant's request, Plaintiff submitted its informal proposal later that day.  (Doc. 9-1) ta 1.  Plaintiff's informal proposal included the following terms:  (1) that Defendant employ 51% of Plaintiff's medical personnel; and (2) a price quote of $358,200.  *Id.* at 1, 4.  In response, Ms. Abraham emailed Ms. Berger stating that Defendant was "okay with the staffing plan." *Id.* at 1.  In regard to the price, Ms. Abraham asked Ms. Berger to call her. *Id.* at 4.

On August 13, 2014, Ms. Abraham sent a second email to Ms. Berger requesting that Ms.

---

[1]  The Court's citation to the hearing transcript refers to the court reporter's original unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Berger telephone her at the earliest convenience. *Id.* at 9. Neither party informed the Court as to whether Ms. Berger contacted Ms. Abraham, nor did the parties disclose to the Court the subject matter of the telephone conversation.

On August 27, 2014, Ms. Abraham sent an email to Ms. Berger requesting further information and explanation of Plaintiff's proposed technical terms and price quote. *Id.* at 14. Ms. Berger responded that same day. *Id.* at 19.

Following Plaintiff's submission of the informal proposal, Plaintiff alleges that it contacted Defendant "on numerous occasions" to discuss the proposed technical and pricing terms. (Doc. 3-2) at 2 (Berger decl. at ¶ 7). Plaintiff alleges that Defendant never communicated concerns or attempted to negotiate the terms with Plaintiff. *Id.* (Berger decl. at ¶ 8). Based on Defendant's "lack of any expression or communication of concerns," Plaintiff assumed that Defendant mutually agreed to the proposed technical and price terms. *Id.* at 3 (Berger decl. at ¶ 8). Plaintiff also asserts that Defendant affirmed Plaintiff's conclusion on September 10, 2014, when Defendant informed Plaintiff that its price was acceptable. *Id.*

Plaintiff further claims that on September 10, 2014, during a phone conversation, Ms. Abraham informed Ms. Berger that Defendant awarded the subcontract bid for the September event to OnSite Healthcare. *Id.* (Berger decl. at ¶ 9). Ms. Berger contends that Ms. Abraham stated that Plaintiff was not awarded the bid because it did not submit a formal proposal.[2] *Id.* (Berger decl. at ¶ 10).

II.     *Discussion*

Plaintiff now requests the Court to (1) enjoin Defendant from employing a vendor, other than Plaintiff, in the performance of Defendant's contract at the September event; and (2) order

---

[2] The issue of the basis of Defendant's award of the subcontractor bid to Onsite Healthcare was not argued before the Court at the September 19, 2014, hearing.

Defendant to collaborate with Plaintiff in the negotiation of a subcontract for the delivery of services at the September event.  (Doc. 3) at 1.

To prevail on a motion for a temporary restraining order or a preliminary injunction, the movant must show:  (1) irreparable harm to the movant if the injunction is denied; (2) a substantial likelihood of success on the merits; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. [3]  *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003) (quotation and citation omitted).  "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Id*. at 1256.  As the party seeking the preliminary injunction, ACC bears the burden of proof.  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1075 (10th Cir. 2009).

> A. *Plaintiff has not established that it will suffer irreparable harm if the preliminary injunction is denied.*

Plaintiff asserts that it will suffer immediate and irreparable harm by loss of customer goodwill or by suffering a diminished competitive position without emergency injunctive relief.  (Doc. 3) at 6-11.  According to Plaintiff, Plaintiff's participation as a subcontractor at the September event would potentially strengthen Plaintiff's ability to obtain substantial revenue through future contracts with the Michigan Army National Guard.  (Doc. 3) at 7-9.

In examining the preliminary injunction factors, "courts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."

---

[3]  The substantive requirements for a temporary restraining order and a preliminary injunction are identical.  *See Valley Community Pres. Comm'n v. Mineta*, 246 F. Supp. 2d 1163, 1165-66 (D.N.M. 2002), *aff'd on different grounds*, 373 F.3d 1078 (10th Cir. 2004) (citing *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quotation and citation omitted).  The Tenth Circuit has explained that "[t]o constitute irreparable harm, an injury must be *certain, great, actual and not theoretical*."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis added) (citation omitted).  "Irreparable harm is not harm that is merely serious or substantial." *Id.* (citation omitted).  Moreover, the movant "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.*  A movant may also satisfy the irreparable harm requirement by demonstrating "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages."  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (*quoting Greater Yellowstone*, 321 F.3d at 1258).

      Plaintiff's alleged injury—the loss of potential future contracts and loss of a competitive advantage—generally requires that a valid legal contract exist between the parties.  *See Dominion Video Satellite, Inc.*, 356 F.3d at 1263 (citations omitted).  Here, it is undisputed that the Agreement is a valid and legally enforceable contract.[4]  Plaintiff contends that the Agreement granted Plaintiff the exclusive rights as the sole subcontractor for the September event.  A review of the Agreement's plain language, however, establishes that the Agreement only pertains to the parties' preliminary negotiations regarding Plaintiff's subcontracting bid.  *See, infra, Section II(B)(1)*.  Thus, it does not logically follow that Plaintiff will suffer harm to goodwill and a diminishment of competition position when the Agreement, standing alone, does not entitle Plaintiff the benefit of attending the September event.

      Furthermore, assuming *arguendo* that Defendant breached the exclusivity clause, Plaintiff's alleged injury does not amount to irreparable harm.  *See Dominion Video Satellite,*

---

[4] The Court clarifies its finding at the September 19, 2014, hearing, by acknowledging that the Agreement is a valid contract between the parties.  The Court, however, finds that, for the reasons stated in this Memorandum Opinion and Order, Plaintiff's assertions, made in its motion and at the hearing, misconstrue the terms of the Agreement.

*Inc.*, 356 F.3d at 1263 ("irreparable harm often arises from the breach of an exclusivity clause"). In its Motion for TRO and Preliminary Injunction, Plaintiff speculates that the September event would generate a "series of contracts" in which the value could exceed "several million dollars in profit." (Doc. 3) at 8. Plaintiff also surmises that due to Defendant's breach, Plaintiff would lose the competitive advantage that it would receive as an incumbent subcontractor for future work with the Michigan Army National Guard. (Doc. 3) at 8-9. Plaintiff's assertions fail to demonstrate a certain, great, or actual harm. Rather, Plaintiff's alleged harm is merely theoretical. Plaintiff has not submitted evidence to the Court that subcontracting at the September event would guarantee or generate future contracts with the Michigan Army National Guard.[5] The Court, thus, finds that Plaintiff's conclusory statements do not support a finding of irreparable harm, and, therefore, do not warrant the issuance of a preliminary injunction.

    B.  *Plaintiff has not shown a substantial likelihood of success on the merits.*[6]

Plaintiff claims that it has a strong likelihood of succeeding on the merits under the four causes of action asserted in its Complaint. In Count I, Plaintiff alleges Defendant materially breached the Agreement. (Doc. 2) at 10-11. In Count II, Plaintiff alleges that Defendant fraudulently induced Plaintiff into entering the Agreement by promising Plaintiff an exclusivity

---

[5] On September 19, 2014, at 1:10 p.m., Plaintiff filed a Supplemental Declaration of Virginia M. Berger (Supplemental Declaration). (Doc. 10-1). In the Supplemental Declaration, Ms. Berger claims that Plaintiff "served as a provider of health care services to the Michigan Army National Guard in November 2013" and that Plaintiff "was informed by the Michigan Army National Guard that its performance was well-regarded by the Army National Guard." (Doc. 10-1). The Court did not consider the Supplemental Declaration in developing its findings because Plaintiff failed to address the Supplemental Declaration during the September 19, 2014, hearing. After review of the Supplemental Declaration, the Court concludes that the Supplemental Declaration does not present sufficient evidence for Plaintiff to meet the heightened standard of a "clear and unequivocal right" to the preliminary injunction.

[6] In its Motion for TRO and Preliminary Injunction, Plaintiff argues that the Court should apply the "modified likelihood of success" requirement because Plaintiff has satisfied the first, third, and fourth factors of a preliminary injunction. (Doc. 3) at 11-12 (citing *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 633 F. Supp. 2d 1257, 1267-68 (D.N.M. 2008). Because the Court finds that Plaintiff has not satisfied the first, third, and fourth factors, the Court will not apply the modified requirement. Plaintiff, therefore, must show a substantial likelihood of success on the merits. *See Guidance Endodontics, LLC*, 633 F. Supp. 2d at 1267-68.

right.  (Doc. 2) at 11-12.  In Count III, Plaintiff claims that Defendant negligently misrepresented the exclusivity right in the Agreement.  (Doc. 2) at 13.  In Count IV, Plaintiff asserts that Defendant breached the covenant of good faith and fair dealing.  (Doc. 2) at 14.  The Court will address each cause of action in turn.

*1.  Breach of Contract*

Plaintiff argues that it has established a substantial likelihood of success on the merits of its breach of contract claim because (1) the Agreement entitled Plaintiff the rights of sole subcontractor for the September event; (2) the parties' email and phone correspondence created a contractually binding agreement for the September event; and (3) Defendant breached the exclusivity clause of the Agreement.  In a breach of contract claim, Plaintiff must demonstrate that (1) a contract existed; (2) Defendant breached the contract; (3) causation; and (4) damages.  *Abreu v. New Mexico Children, Youth & Families Dept.*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011).

First, the Court rejects Plaintiff's contention that the terms of the Agreement provided that Plaintiff would be the exclusive subcontractor for the September event.  The plain language of the Agreement limits the parties' obligations to preliminary negotiations for a "possible" contract for the September event.  *See* (Doc. 8-1) at 2-3; *see also Resolution Trust Corp. v. Ocotillo W. Joint Venture*, 840 F. Supp. 1463, 1482 (D.N.M. 1993) (stating that terms of a contract are given their plain meaning).  Accordingly, the Court finds that Plaintiff's assertion falls outside the scope of Defendant's obligations under the Agreement, and, therefore, Plaintiff cannot satisfy the second element for a breach of contract claim.  *See Tapia v. City of Albuquerque*, 2014 WL 1285663 (D.N.M. Mar. 31, 2014) (breach of contract requires showing defendant failed to perform obligation).

The Court also rejects Plaintiff's argument that the parties' email and phone correspondence constituted a valid offer and acceptance to establish a contract to provide services at the September event. In her declaration, Ms. Berger stated that based on Defendant's lack of communication, Plaintiff concluded that its offer was mutually acceptable. To establish a binding contractual agreement, Plaintiff must demonstrate an objective manifestation of mutual agreement. *Garcia v. Middle Rio Grande Conservancy Dist.,* 99 N.M. 802, 807, 664 P.2d 1000, 1005 (Ct. App. 1983), *overruled on other grounds by Montoya v. AKAL Sec., Inc.,* 114 N.M. 354, 838 P.2d 971 (1992). Here, the record reveals insufficient evidence of agreement or mutual assent because Defendant's silence, under the circumstances, did not establish acceptance. *See Shively v. Santa Fe Preparatory Sch., Inc.*, 21 Fed. Appx. 875, 877 (10th Cir. 2001) (discussing acceptance by silence in New Mexico) (citation omitted).

Lastly, the evidence before the Court demonstrates that Defendant did not breach the exclusivity clause of the Agreement. The exclusivity clause requires that the parties use "best efforts to come to technical and pricing terms." (Doc. 8-1) at 3. Plaintiff's own evidence demonstrates that Defendant used best efforts to collaborate with Plaintiff. Specifically, from August 12, 2014, to August 27, 2014, Ms. Berger and Ms. Abraham corresponded via email and telephone. Although there is insufficient evidence detailing the telephone conversations, the emails show that Defendant discussed its requirements and asked Plaintiff to clarify its capabilities and informal bid. *See* (Doc. 9-1). The Court, therefore, concludes that Defendant satisfactorily used "best efforts" to collaborate with Plaintiff during the preliminary negotiations.

In addition, the Court finds that there is insufficient evidence that Defendant breached the exclusivity clause when it collaborated with OnSite Healthcare. The exclusivity clause states, in relevant part, ". . . that neither [party] shall pursue this opportunity on their own or in

8

collaboration with anyone else other than parties to this Agreement.  If the parties cannot reach mutually agreeable technical and/or pricing terms, Addon may utilize another teaming partner for this opportunity." (Doc. 8-1) at 3.  As addressed earlier, Plaintiff's argument that Defendant's silence constituted acceptance of the terms of a contract to provide services at the September event fails because silence does not establish acceptance.  *See Shively*, 21 Fed. Appx. at 877.  Moreover, Plaintiff's proffered evidence that the parties mutually agreed to technical and pricing terms fails to demonstrate a *substantial* likelihood of Plaintiff's success on the merits based on Defendant's breach of the exclusivity clause.  The evidence only indicates that Defendant was amenable to Plaintiff's staffing plan and that Defendant may have stated that the pricing terms were acceptable.  *See* (Doc. 9-1) at 1; (Doc. 3-2) at 3 (decl. at ¶ 8).  Because there is insufficient evidence that Defendant mutually agreed to the technical and pricing terms for the September event, it follows that Defendant did not breach the exclusivity clause when it partnered with OnSite Healthcare.

Accordingly, Plaintiff has failed to establish a substantial likelihood of success on the merits of its breach of contract claim.

### 2. *Fraudulent and Negligent Misrepresentation*

In its fraudulent and negligent misrepresentation claims, Plaintiff argues that Defendant misrepresented its intention to collaborate solely with Plaintiff for the September event.  In order to prevail on a claim of fraudulent or negligent misrepresentation, Plaintiff must make a *prima facie* showing that (1) Defendant made a material misrepresentation of fact to Plaintiff; (2) Plaintiff relied upon the representation; (3) Defendant knew the representation was false at the time it was made or Defendant made it recklessly; and (4) Defendant intended to induce Plaintiff to rely on the representation.  *See Saylor v. Valles*, 2003–NMCA–037, ¶ 17, 133 N.M. 432.  A

misrepresentation can be made by either commission or omission. *In re Stein*, 2008–NMSC–013, ¶ 35, 143 N.M. 462.  "The elements of fraudulent representation are virtually the same as the elements of negligent misrepresentation except that the elements must be proved with clear and convincing evidence." *Freeman v. Fairchild*, ___ P.3d ___, ¶ 35, 2014 WL 4460449 (N.M. App.).

Here, Plaintiff has not shown, at this stage of the proceedings, that Defendant made a material misrepresentation of fact.[7]  In its Motion for TRO and Preliminary Injunction, Plaintiff makes unsubstantiated inferences that Defendant only entered into the Agreement as a subterfuge to gain access to Plaintiff's prices.  Plaintiff also claims that it unwittingly relied on Defendant's representation that it intended to only collaborate with Plaintiff.  Plaintiff's arguments, however, fail to take into consideration the part of the exclusivity clause that allows Defendant to partner with another subcontractor, if the parties could not reach a mutual agreement regarding technical and/or pricing terms.  Plaintiff also has not proffered evidence, except for Ms. Berger's assumptions, that Defendant collaborated with another subcontractor during the August 12, 2014, to August 27, 2014, preliminary negotiations.  For these reasons, the Court finds that Plaintiff has not clearly shown a substantial likelihood of success on the merits of its fraudulent and negligent misrepresentation claim.

### 3. Breach of the Duty of Good Faith and Fair Dealing

Plaintiff claims that Defendant breached the covenant of good faith and fair dealing by injuring Plaintiff's "right to receive the benefit of collaborating exclusively with" Defendant on the September event. (Doc. 3) at 15.  "The implied covenant of good faith and fair dealing requires only that neither party injure the rights of the other party to receive the benefit of their

---

[7] The Court notes that Plaintiff did not address its fraudulent and negligent misrepresentation claims during the September 19, 2014, hearing.

agreement." *Smoot v. Physicians Life Ins. Co.*, 2004 -NMCA- 027 ¶ 13, 135 N.M. 265, 268 (citation omitted). The implied covenant "is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Id.*, 135 N.M. at 269 (quotation and citation omitted).

Based on Plaintiff's oral arguments and its Motion for TRO and Preliminary Injunction, the Court views Plaintiff's argument as two-fold. First, Plaintiff asserts that Defendant failed to exclusively collaborate with Plaintiff during the preliminary negotiations. As the Court already noted, Plaintiff has failed to submit sufficient evidence to corroborate the unsubstantiated claims that Defendant partnered with other subcontractors during the August 12, 2014, to August 27, 2014, preliminary negotiations. Second, Plaintiff contends that the Agreement entitled Plaintiff rights as the sole subcontractor for the September event. As stated earlier, the plain language of the Agreement does not guarantee this benefit. This benefit would only materialize if a successful contract resulted from the parties' preliminary negotiation efforts. Accordingly, Plaintiff has not made a clear showing of a substantial likelihood of success on the merits of its breach of the covenant of good faith and fair dealing claim.

Based on the foregoing reasoning, the Court finds that Plaintiff has failed to establish a substantial likelihood of success on the merits of its four causes of action, and, thus, does not warrant the issuance of a preliminary injunction.

> C.  *Plaintiff has not established that the threatened injury outweighs the harm that the preliminary injunction may cause Defendant.*

Plaintiff argues that the balance of harms favors Plaintiff because the injury to Defendant is minimal and self-inflicted. (Doc. 3) at 19-20. Defendant asserts that granting the preliminary injunction, and, thus, enjoining Defendant from continuing its contract with OnSite Healthcare, will expose Defendant to substantially greater harm than Plaintiff's alleged injury. Specifically,

11

a preliminary injunction would most likely expose Defendant to liability for breaching OnSite Healthcare's contract. In addition, Defendant may suffer loss of good will and potential liability for breach of contract with the Michigan Army National Guard if Defendant cannot perform when its services are due.

Contrary to Plaintiff's assertions, the evidence and arguments before the Court indicate that Defendant will likely suffer a greater harm than Plaintiff if the Court grants the preliminary injunction. As noted earlier, Plaintiff's alleged harm is merely theoretical. Defendant, on the other hand, will most likely suffer an immediate and substantial harm if the Court prohibits it from performing its contract with OnSite Healthcare, and, thus, potentially prevent Defendant from performing its contract with the Michigan Army National Guard at the September event. The Court, therefore, concludes that Plaintiff has not shown that its alleged threatened injury outweighs any harm that Defendant may suffer as a result of granting the preliminary injunction.

  D. *Plaintiff has failed to show that a preliminary injunction will not be adverse to the public interest.*

Plaintiff alleges that a preliminary injunction will preserve public interest because "New Mexico . . . has a strong public policy of freedom to contract that requires enforcement of contracts. . . ." (Doc. 3) at 20 (citing *State ex rel. Udall v. Colonial Penn Ins. Co.*, 1991-NMSC-048 ¶ 9, 112 N.M. 123 (quotation and citation omitted)). Plaintiff also argues that there is a great public interest in favoring competition. *Id.* (citing *Guidance Endodontics, LLC*, 633 F. Supp. 2d at 1280). In support of its contention, Plaintiff argues that the preliminary injunction would "promote the enforceability of exclusivity provisions (and contracts in general) and would discourage unscrupulous parties from the sort of 'bait and switch' that has resulted in irreparable harm to" Plaintiff. (Doc. 3) at 20. Moreover, Plaintiff contends that the preliminary injunction would not prevent Defendant from performing its contract with the Michigan Army National

12

Guard for the September event. (Doc. 3) at 20. In response, Defendant argues that a preliminary injunction would stifle competition by prohibiting Defendant from negotiating with other subcontractors.

The Court is mindful of the importance of the freedom to contract and enforcing contractual duties. However, as addressed earlier, Plaintiff misconstrues the terms of the Agreement. Under the Agreement, Defendant is not contractually obligated to grant Plaintiff the exclusive subcontractor rights for the September event. The Agreement only requires that Defendant use "best efforts" to negotiate technical and pricing terms. While policy requires that the Court enforce contracts, policy does not demand that the Court force a non-existent obligation on a contracting party. Furthermore, granting the preliminary injunction and prohibiting Defendant from employing other subcontractors would be adverse to public interest. The preliminary injunction, in essence, would stifle competition by vitiating the section of the exclusivity clause that permits Defendant's utilization of another subcontractor if the parties could not mutually agree to the technical and/or pricing terms. For the aforementioned reasoning, the Court finds that it would not be in the public interest to grant the preliminary injunction.

Accordingly, Plaintiff has not met its heavy burden with respect to any of the preliminary injunction factors. The Court, therefore, denies Plaintiff's request for a temporary restraining order and preliminary injunction.

IT IS THEREFORE ORDERED that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support (Doc. 3) is DENIED.

_____
UNITED STATES DISTRICT JUDGE